Ruffin, C. J.
 

 By the general law, the sheriff of Burke, if he had authority to sell at all, was obliged to sell at the Courthouse of his own County ; and he could not, therefore, go to the Court house of the new County for that purpose.
 
 Rev. St. Ch.
 
 45,
 
 Sec.
 
 10. The first question turns, then, upon the'power and duty of the sheriff of Burke to make the sale. We think very clearly that he was the person, under the Acts establishing McDowell, 1812. C. 10 and 11. That county was constituted of parts of Rutherford and Burke ; and, by the Sth Section of Ch. 11, it is enacted, that all process issued from the Superior Courts of Burke and Rutherford against the Citizens of McDowell, until a sheriff shall have been elected for McDowell, shall be executed by the sheriff of Burke or Rutherford ; and that, after that time, such process shall be directed to the sheriff of McDowell and be executed by him; And the 8th Section enacts “that nothing in this act shall be construed, so as to prohibit the sheriffs of Burke and Ruth
 
 *206
 
 erford from collecting such moneys as are due or may become due on any judgment before the first Court for McDowell.” From those provisions it is plain, the legislature did not mean, that a creditor should be defeated or delayed of execution for his debt by the division of the county. On the contrary, executions, taken out from the Courts of Burke, were to be directed to the sheriff of Burke, until there should be a County Court and Sheriff for McDowell; and of course, the sheriff, to whom the execution was by law to be directed and was directed, is the proper officer to execute it; and it is the sole purpose of the 8th Section to provide against a contrary construction, in respect to the officers mentioned in it.
 

 The Court agrees also to the instructions given to the jury under the evidence. It is true that the exception does not set forth the evidence in detail, and therefore we cannot affirm positively, what it was, But it is stated, in general terms, that it tended to prove an agreement between the father and sons before the sale, that the land should be sold by the sheriff and the sons should buy it and take a conveyance, to the double intent, that the father should still enjoy it, and that his other creditors should be defrauded; and, under the verdict of the jury, it must be taken that the evidence did establish such an agreement and upon those intents. Indeed, it was admitted at the bar, that the facts upon the trial were clearly against the honesty of the transaetion between the father and sons, if, upon the supposition of the sons paying their own money, in point of law, there could be a fraud, •which would avoid the sheriff’s deed at law. We do not think, that the plaintiff’s case necessarily depends on avoiding the deed to the defendants, by reason of the fraud in their purchase. For, if they bought in trust for their father, whether
 
 bona fide
 
 or not, the land would be liable under the Act of 1812 to execution for his debts, unless it was a part of the agreement, and that
 
 bona fide
 
 and
 
 *207
 
 openly, that the sons should take the sheriff’s deed, as a security, for the sum paid by them for the land, or some other debt. No doubt such a transaction in good faith would be supported, as was mentioned in
 
 Dobson
 
 v.
 
 Erwin,
 
 1 Dev. & Bat. 569; and then the interest of the father could only be sold under execution, if at all, as an equity of redemption, and subject to the payment of the sums advanced by the sons, as a debt to them. ' But nothing of that kind is suggested here. On the contrary, the case is, that an insolvent father and his sons contrive to bring a tract of land, worth $1500, to sale on execution, with the view that the sons shall buy it at a great-under-value, and hold it upon a secret trust for the father, in order by those means to defeat creditors. It would be surprising, if a transaction so obviously covinous and injurious to creditors, and tending so directly to enable debtors in effect to keep back parts of their property from their creditors, could be supported, or that the common law should not be competent to detect and redress it. In the case of
 
 Dobson
 
 v.
 
 Erwin,
 
 it was held, that if the debtor advanced the money, or a considerable part of it, to make the purchase at the sale of the sheriff, and the purchase was made for his own use, that was a fraud which would avoid the title, though the sale was at the instance of another and for a just debt. For, in such a case, the sale, though in form that of the sheriff, is, by the contrivance of the debtor and the purchaser, and in respect of their fraudulent purpose, substantially as much a sale
 
 inter partes,
 
 as if there had been no intervention of the sheriff. It is the same thing precisely, though all the money paid to the sheriff be advanced by the person, to whom he makes the deed, provided only there be the same intent in each case to cheat creditors. But it is said, that, in such a case, the law cannot admit the idea, that the highest bidder at a public sale, who pays his own money, can have an intent to cheat the creditors Of the former
 
 *208
 
 owner of the property, since the sale is made by the law itself for a necessary purpose. But all know, that is no protection against frauds. Many frauds are committed on the debtors in such sales, by bringing them on by surprise, by suppressing bidding and the like. So likewise many debtors contrive by combinations with near relations or friends, at such sales, to have their property bought in at an under-value, in the hope, that thereby other creditors will be kept off, while they will have the enjoyment oí the property at but slight expense to their relations. A man with the money in his pocket refuses to apply it to the payment of a judgment debt, in order that an execution may issue and his property be sold, and bought for a small price by his family lor his enjoyment, so that he may keep his money, and another creditor, who is expected to come shortly with an execution, may find nothing tangible, out of which he may make his debt. Surely there can be no clearer fraud, than such a contrivance to put a man’s property out of the reach of an execution. The circumstance, that the purchaser pays his own money, is evidence indeed., that the purchase was on his own account and
 
 Iona
 
 fide, But it is certainly not conclusive; for, as mentioned by Lord Mansfield, in
 
 Cadogan
 
 v.
 
 Kenneth,
 
 Cowp. 432, there may be cases where a person gives a full price and yet the thing, being done
 
 mala fide
 
 for the purpose of defaulting creditors, is fraudulent and void. So, if the faiher did not have the money, yet the case would be the same upon such an agreement and with such intent. Every man, whose property is offered for sale, whether by himself or an officer, is naturally disposed to get the most for if, at least a fair price ; and it is the common experience, when nothing is meant but what is fair,that such a man uses some exertions to collect bidders and to induce them to go to a reasonable value. Ifhe has other creditors, perhaps it is his duty to them thus
 
 *209
 
 to act; and most men. who adequately feel the moral obligation of contracts, would probably do so. But, although that may be an imperfect duty, as there is no mode of enforcing it, yet the debtor’s own interest would prompt him to the use of means for making the property, which was to be sold from him forever, go as high as he could, so as to reduce his indebtedness as much as possible ; and in that way his creditors would get the benefit of his labors. But if he were encouraged to make bargains before-hand with his friends, whereby it becomes his interest to desist, from all exertions to make a fair sale, to disparage the property, to induce his family and friends secretly not to contend in the bidding with another man, who intends to buy, if it can be done at a sacrifice, and let him have the use of the property, it is manifest that it would open a door to very iniquitous practices to the prejudice of creditors. The conduct of such a debt- or and purchaser, in reference to other creditors, is precisely analogous to that of a combination among others, to suppress competition in reference to the debtor himself. The debtor may not be bound to aid in getting a good price for the property; but it is a fraud on the law and other creditors, if he binds himself not to do so, or enters into agreements for his own benefit, which restrain him from doing so. Suppose, for example, that the creditor, whom it is the intent to defeat, resides at a distance,' and that it is one part of the plan, that the salé shall talté place under the first execution, before he can know of it or be apprised of his debtor’s embarrssaments, and théreby prevent him from attending and making the propérty bring its Value, Or suppose, that by consent betweeii these parties and the sheriff, the sale is made without advfer* tisement, with a view to a sacrifice; or that; with thé samé view; the debtoi1 and his sons pull down the' advertisements and prevent a general knowledge of the sáfe j it jé obvious, that in ail those cases, and ‘algo iti
 
 'tiiMf
 
 
 *210
 
 others, which may be conceived, great loss might be thrown on creditors and a corresponding gain unfairly obtained by the debtor _and his family, which is altogether contrary to fair dealings and good morals. It is not doubted, that a son may properly and ought to assist a reduced parent, and that he may do so by buying the father’s land, as the highest bidder, when it is sold for his debts, in order to provide a home and a subsistence for him, provided it be done
 
 bona fide
 
 and openly. But that never can be the case, when there is a previous agree» ment between the father and sou for such a purchase, upon.a secret trust for the father and with the intent to defeat a creditor, which implies that a loss is to arise to the creditor to the amount of the difference between the value of the land and the price to be given by the son, and that the father shall or will do nothing to prevent that loss, but, on the contrary, is to promote it in any way he can, so as to subserve his secret interest. Jn substance, such transactions, when the facts can be got at, must be .deemed by the law contracts of the patfles ? and therefore, when it happens that the purchase’is '.made at an under-value and is thus to the actual^M^jiiliee'of crédito ors, as, indeed, it was intended, it -jpaSt "be.'held void. For, it is clear, although the sale be jpSde by tlre sheriff, yet it is only colorably so; for the inducement to the purchase arises and the real contract {or it is made beforehand, between the parties, and its execution js to be dependant upon the sales happening to Be made at an under, value. Therefore the truth of the ¡páse is no more nor less than this. A debtor, who kn.ows his land may soon.be sold under execution, makes an agreement with .a sp.n,. that, for an inadequate price — -paid to another creditor — a conveyance shall be made to him of the land as 'Mponan.absolute sale, but'upon a secret trust for the -debtor,.:aud expressly for the purpose of defeating the expected execution-.; and the question is, whether that
 
 *211
 
 transaction is to stand good against such creditors. Most certainly not. The purpose is iniquitous and the deed must be void.
 

 Ter Curiam.
 

 Judgment affirmed.